**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**JERONE MCDOUGALD,**

       **Plaintiff,**

       v.

**DR. MICHAEL DAVIS, et al.,**

       **Defendants.**

**Civil Action 2:16-cv-545
Judge George C. Smith
Magistrate Judge Jolson**

## REPORT AND RECOMMENDATION AND ORDER

This matter is before the Court on cross-motions for summary judgment. For the reasons set forth below, the Court **RECOMMENDS** that Defendant Morgan be **DISMISSED without prejudice** because of Plaintiff's failure to effect timely service; Plaintiff's Motion for Summary Judgment be **DENIED** (Doc. 28); and Defendants' Motion for Summary Judgment be **GRANTED** (Doc. 31). Further, Defendants' Motion for Leave to Amend Exhibits A and B Filed in Support of Summary Judgment Motion (Doc. 34) is **GRANTED**; Plaintiff's Motion to Appoint Counsel (Doc. 35) is **DENIED**; and Plaintiff's Motion for Leave to Supplement Summary Judgment Motion (Doc. 36) is **DENIED**.

### I. BACKGROUND

    **A. Factual Background**

On May 26, 2015, Plaintiff Jerone McDougald,[1] an inmate at the Southern Ohio

---

[1] Although Plaintiff lists his first name as "Jerone" and his inmate number as 548-527, the ODRC database lists inmate number 548-527 as "Jerome McDougald." https://appgateway.drc.ohio.gov/OffenderSearch (last visited on April 20, 2018).

Correctional Facility ("SOCF"), submitted a Request for Religious Accommodation requesting kosher meals to comply with his Jewish faith. (Doc. 28-1, PAGEID #: 125). Specifically, Plaintiff stated he was requesting "kosher meals, food with no preservatives so I can be in compliance with my religion. I already have the reading material for study." (*Id.*). Plaintiff further noted that the basis for his requested accommodation was that his "religion requires [him] to eat food that is pure and healthy for my body and the food here is processed and has preservatives in it[.]" (*Id.*). Plaintiff acknowledged that at that time, he was not in contact with any religious leaders to verify his request. (*Id.*).

On June 1, 2015, the SOCF Chaplain, Defendant York, issued a recommendation that Plaintiff's dietary requests be referred to the Religious Services Administrator per Ohio Department of Rehabilitation and Correction ("ODRC") policy, and noted that Plaintiff "identified himself as Jewish approximately 6 years ago."[2] (*Id.*; *see also* Doc. 34-1 at 4). In his Response Form, Defendant York noted that Plaintiff felt a kosher diet is "more healthy than the meals currently served," and that Plaintiff does not have contact with a religious leader, nor has he had a bar mitzvah. (*Id.*). On June 19, 2015 and June 23, 2015, members of the Accommodation Review Committee subsequently recommended that Plaintiff's accommodation request be referred to the Religious Services Administrator, Defendant Michael Davis. (Doc. 28-1, PAGEID #: 125).

On July 22, 2015, Defendant Davis denied Plaintiff's request for kosher meal accommodation. (*Id.*, PAGEID #: 129). Defendant Davis's affidavit states that he did so because of Plaintiff's responses in his Request for Religious Accommodation, and that he also

---

[2] In his First and Second Amended Complaints, Plaintiff alleges that "Chaplain York recorded falsified information enclosing that I identified myself as Jewish 6 years ago, when I recently changed my religion in 2015." (Doc. 11, PAGEID #: 52; Doc. 23, PAGEID #: 102). When Plaintiff first identified as Jewish, however, is irrelevant to Plaintiff's claims.

took into account the information provided by Defendant York.  Specifically, Defendant Davis considered that the basis for Plaintiff's request was that kosher food qualified as a healthy diet, that Plaintiff did not have a bar mitzvah, and did not have contact with a religious leader.  (Doc. 34-2, at 3).

Plaintiff tried again.  On March 22, 2016 and April 26, 2016, he submitted two additional requests for kosher meals.  (*Id.*, PAGEID #: 130, 132).  In response, Defendant York recommended on May 3, 2016, that new dietary requests should be forwarded to the Religious Services Administrator.  Defendant York expressly noted that Plaintiff appeared sincere in his religious beliefs.  (*Id.*, PAGEID #: 133).  On May 19, 2016, Defendant Major Warren, a member of the Accommodation Review Committee, also recommended referral to the Religious Services Administrator.  (*Id.*).

On September 30, 2016, Defendant Davis approved Plaintiff's accommodation request for kosher meals, and it is undisputed that Plaintiff continues to receive kosher meals.  (*Id.*, PAGEID #: 134).

### B.  Procedural Background

On June 10, 2016, Plaintiff, proceeding *pro se*, initiated this civil action against Defendant Davis under 42 U.S.C. § 1983.  (Doc. 1).  Plaintiff alleges that, by denying his first request for kosher meals, Defendant Davis violated his constitutional rights under the Free Exercise Clause of the First Amendment.  (*Id.*).

On June 22, 2016, Plaintiff filed a Motion for Leave to File an Amended Complaint ("Plaintiff's First Motion to Amend"), requesting leave to add additional defendants (although he did not specify whom); attach an Exhibit A; and add a claim under the Religious Land Use and Institutionalized Persons Act ("RLUIPA") 42 U.S.C. § 2000 cc-1(a).  (Doc. 5).  Before the Court

could rule, Plaintiff filed another Motion for Leave to File an Amended Complaint ("Plaintiff's Second Motion to Amend"), requesting leave to add Defendants Warren, Morgan, and York to this action, as well as a cause of action under the Fourteenth Amendment, and failure to follow ODRC policy 72-Reg-02. (Doc. 9). The Court granted Plaintiff's First and Second Motions to Amend, but directed Plaintiff to file a comprehensive amended complaint, naming every defendant and claim. (Doc. 10).

Plaintiff complied, filing his Amended Complaint on August 11, 2016. (Doc. 11). The next day, this Court issued a Notice advising, in relevant part, that Plaintiff failed to properly serve Defendant Davis with the Amended Complaint. (Doc. 13). Accordingly, the Court advised Plaintiff to serve the Amended Complaint on Defendant Davis pursuant to Rule 5 of the Federal Rules of Civil Procedure. (*Id.*).

On August 16, 2016, Plaintiff filed a third Motion for Leave to File an Amended Complaint, requesting leave "to file an amended complaint adding et, al," and to perfect service of the Amended Complaint upon Defendant Davis ("Plaintiff's Third Motion to Amend"). (Doc. 14). Plaintiff also submitted a summons form for Defendant Davis, presumably for service of the Amended Complaint. The Court denied Plaintiff's Third Motion to Amend, as it was unclear why Plaintiff needed to amend the complaint and how his proposed complaint would differ from the Amended Complaint. (Doc. 15). The Court's Order also echoed its previous instruction requiring Plaintiff to serve Defendant Davis according to Rule 5 of the Federal Rules of Civil Procedure, not Rule 4. (*Id.*, PAGEID #: 62).

On August 22, 2016, Defendants Warren, Morgan, and York filed a Motion for More Definite Statement. (Doc. 16). Those Defendants argued that the operative complaint failed to comply with Federal Rule of Civil Procedure 10(b)'s requirement that a party "state its claims or

4

defenses in numbered paragraphs, each limited as practicable to a single set of circumstances." (*Id.*). Defendants also asserted that neither Defendant Davis nor his counsel had been served with Plaintiff's Amended Complaint. (*Id.*, PAGEID #: 65). In response, Plaintiff moved for leave to file an amended complaint with numbered paragraphs in compliance with Rule 10(b), attaching a proposed second amended complaint. (Doc. 17-1).

On September 23, 2016, Defendants Warren and York also filed an Answer in response to Plaintiff's Amended Complaint, which asserted that this Court lacked personal jurisdiction over Defendant Davis and Morgan, arguing that neither party was served properly. (Doc. 21).

The Court granted Plaintiff's Motion to File his Second Amended Complaint—with numbered paragraphs—against Defendants Davis, Morgan, Warren, and York, in both their individual and official capacities. Thus, the Second Amended Complaint is the operative complaint in this action. It alleges that Defendants' denial of his kosher meals and failure to provide him reasons for the denial or an opportunity to appeal violated the Free Exercise Clause of the First Amendment, RLUIPA, ODRC policy, and his rights under the Fourteenth Amendment. (Doc. 23 at 1–3). Plaintiff also alleges Defendants' acts "clearly show" that they "conspired to violate" Plaintiff's rights. (*Id.* at 3). In terms of relief, Plaintiff seeks $200,000 per Defendant. (*Id.*). In response, all Defendants filed an Answer, *Instanter*, to Plaintiff's Second Amended Complaint, again asserting that this Court did not have personal jurisdiction over Defendants Morgan and Davis, as service was never perfected upon either party. (Doc. 25, PAGEID #: 107–09).

On December 11, 2017, Plaintiff filed the instant Motion for Summary Judgment. (Doc. 28). Defendants Davis, Warren, and York filed a Cross-Motion for Summary Judgment in response. (Doc. 31). On January 26, 2018, Defendants filed a Motion for Leave to Amend

5

Exhibits A and B to their Motion for Summary Judgment, seeking to correct filing errors and to attach declarations from Defendants York and Davis. (Doc. 34). Plaintiff subsequently filed a Motion to Appoint Counsel (Doc. 35), and moved for leave to supplement his Motion for Summary Judgment with facts involving a conduct report that Plaintiff alleged he unlawfully received for fasting. (Doc. 36, PAGEID #: 270). Plaintiff's Motion for Summary Judgment, Motion to Appoint Counsel, and Motion for Leave, as well as Defendants' Cross-Motion for Summary Judgment and Motion for Leave are now before the Court.

## II. CROSS-MOTIONS FOR SUMMARY JUDGMENT (Docs. 28, 31)

### A. Summary Judgment Standard

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the initial "responsibility of informing the district court of the basis for its motion, and identifying those portions" of the record that demonstrate "the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *see id.* at 255 ("The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.") (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)). A genuine issue of material fact exists if a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (explaining that "genuine" amounts to more than "some metaphysical doubt as to the material facts"). Consequently, the central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided

6

that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52.

**B. Service**

As a threshold matter, Defendants argue that service was never perfected on Defendant Morgan and, although the Ohio Attorney General appeared on his behalf, Defendant Morgan did not waive personal service or any defenses available under the law. (Doc. 31 at 1). Indeed, Defendants Warren, Morgan, and York, collectively through the Ohio Attorney General, moved the Court for a more definite statement on August 22, 2016 (Doc. 16), but, on September 15, 2016, Defendant Morgan's summons was returned unexecuted. (Doc. 19). Absent a proper service of process, consent, waiver, or forfeiture, a court may not exercise personal jurisdiction over a named defendant. *Wells v. Rhodes*, 592 F. App'x 373, 377 (6th Cir. 2014) (citing *King v. Taylor*, 694 F.3d 650, 655 (6th Cir. 2012)).

Here, Defendant Morgan was not served properly. *See King*, 694 F.3d at 655–56 ("[F]ull awareness that [defendant] had been sued makes no legal difference to the question whether [defendant] was properly served."). Further, Plaintiff does not set forth good cause for his failure to effect service and offers no explanation or justification for his failure to remedy the defects in service. Finally, it does not appear that Defendant Morgan has waived his personal jurisdiction defense. *See Gerber v. Riordan*, 649 F.3d 514, 519 (6th Cir. 2011); *Best v. AT&T Inc.*, No. 1:12-CV-564, 2014 WL 12571407, at *5 (S.D. Ohio Sept. 16, 2014), *adopted sub nom.*, *Best v. Mobile Streams, Inc.*, No. 1:12-CV-564, 2014 WL 4988220 (S.D. Ohio Oct. 7, 2014). Consequently, it is **RECOMMENDED** that all claims against Defendant Morgan be **DISMISSED without prejudice** for failure to effect timely service under Federal Rule Civil Procedure 4(m).

## C. RLUIPA

RLUIPA "prohibits a state from imposing substantial and unjustified burdens on the religious liberty of state prisoners." *Berryman v. Granholm*, 343 F. App'x 1, 4 (6th Cir. 2009). It provides in pertinent part: "No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution," unless the burden furthers "a compelling governmental interest," and does so by "the least restrictive means." 42 U.S.C. § 2000cc-1(a)(1)–(2). RLUIPA defines "religious exercise" to include "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." § 2000cc-5(7)(A). "The threshold inquiry, however, is 'whether the challenged governmental action substantially burdens the exercise of religion.'" *Ervin v. Davis*, No. 2:16-CV-186, 2017 WL 2573251, at *3 (S.D. Ohio June 14, 2017), *adopted by*, No. 2:16-CV-186, 2017 WL 3600447 (S.D. Ohio Aug. 21, 2017) (quoting *Baranowski v. Hart*, 486 F.3d 112, 124 (5th Cir. 2007).

Although RLUIPA permits "appropriate relief against a government," the Sixth Circuit and this Court consistently have held that such relief does not extend to monetary damages. *See, e.g.*, *Cardinal v. Metrish*, 564 F.3d 794, 801 (6th Cir. 2009); *Berryman v. Granholm*, 343 F. App'x 1, 4 (6th Cir. 2009) ("[B]ecause RLUIPA's 'appropriate relief' language does not clearly and unequivocally indicate that the waiver extends to monetary damages, the Eleventh Amendment bars plaintiff's claim for monetary relief" under the Act."); *Nelson v. Jackson*, No. 2:12-cv-1167, 2014 WL 4109445, at *12 (S.D. Ohio Aug. 19, 2014). Here, Plaintiff seeks only monetary damages, which are not available under RLUIPA. Further, even if Plaintiff sought additional relief, such as injunctive relief (which he did not), that claim would be moot because he is now receiving kosher meals. *See Metrish*, 564 F.3d at 798–99 (holding that, because inmate had received the relief in the form of kosher meals and was not entitled to monetary

damages, his RLUIPA claim was moot). Consequently, it is **RECOMMENDED** that Defendants' Motion for Summary Judgment as to Plaintiff's RLUIPA claim be **GRANTED.**

### D. Constitutional Claims

"To establish a prima facie claim under § 1983, a plaintiff must satisfy two elements: (1) that defendants acted under color of state law, and (2) that defendants deprived plaintiff of a federal statutory or constitutional right." *Ervin*, 2017 WL 2573251, at *3 (citing *Flagg Bros. v. Brooks*, 436 U.S. 149, 155 (1978); *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994); *United of Omaha Life Ins. Co. v. Solomon*, 960 F.2d 31, 33 (6th Cir. 1992) (per curiam)). Conclusory allegations, however, are insufficient to state a claim under § 1983. *Id.* (citation omitted). Plaintiff alleges that Defendants' actions violated his First and Fourteenth Amendment Constitutional rights to free exercise of religion, equal protection of the law, and due process.

*1. Official Capacity Claims*

The Eleventh Amendment bars Plaintiff's official capacity claims against all Defendants. As Defendants note, they raised the issue of Eleventh Amendment immunity (Doc. 31, PAGEID #: 153 (citing Docs. 11, 21, 25)), and thus did not waive their right to this defense. *See, e.g.*, *Colvin v. Caruso*, 605 F.3d 282, 289 (6th Cir. 2010) (an official-capacity suit against a state official is deemed to be a suit against the state and is thus barred by the Eleventh Amendment, absent waiver) (citing *Cady v. Arenac Cty.*, 574 F.3d 334, 344 (6th Cir. 2009)). Consequently, sovereign immunity bars the § 1983 claims for money damages against Defendants in their official capacities.

*2. Individual Capacity Claims*

The Court next addresses the remaining claims against Defendants in their individual capacities.

a. First Amendment

In order to demonstrate a violation of the right to religious freedom in the prison setting, a plaintiff must show not only that the religion in question is, in fact, a religion, but also "a sincere belief in the tenets of the questioned religion." *Ervin*, 2017 WL 2573251, at *3.

> If a plaintiff can demonstrate a sincere belief in a recognized or legitimate religion, his right to practice that religion should be accommodated unless it interferes in some fashion with the need for internal order and discipline which is essential to the prison setting.
>
> * * *
>
> Thus, the proper test to be applied to whether an institutional denial of the right to engage in certain religious practices or ceremonies is an appropriate restriction on an inmate's First Amendment rights takes these factors into account: whether the restriction is logically related to a legitimate interest in security, whether the inmate is provided with alternative means of exercising his right to pursue the religion in question, the impact of any accommodations of the practice on other inmates, prison personnel, or the allocation of prison resources, and the existence of ready alternatives to the challenged regulation or prohibition. *O'Lone v. Estate of Shabazz*, 482 U.S. 342 (1987); *Turner v. Safley*, 482 U.S. 78 (1987).

*Id.* at 3–4. The standard defers to prison officials due to the "'inordinately difficult undertaking' of prison administration, a task 'that requires expertise, planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government.'" *Berryman v. Granholm*, 343 F. App'x 1, 4 (6th Cir. 2009) (quoting *Turner*, 482 U.S. at 89).

In this case, it is undisputed that Judaism is a legitimate religion and that Plaintiff now holds sincere beliefs. Because it is also undisputed that Plaintiff now receives kosher meals, Plaintiff's First Amendment claims appear to be based on the initial denial of his requested kosher meal accommodation. When Defendant York interviewed Plaintiff concerning that request, Plaintiff indicated that he possessed and began to read materials concerning Judaism. Because those materials alone did not necessarily mean that Plaintiff had embraced the Jewish

10

religion, Defendant York looked for other indicia that Plaintiff sincerely believed in the religion's tenets. For example, Defendant York inquired as to whether Plaintiff was in contact with Jewish clergy or had become a bar mitzvah. Plaintiff answered no in response to both questions and indicated that his desire for kosher meals was driven by health. Thus, it appeared Plaintiff desired to join the many other health conscious individuals—Jews and non-Jews alike— eating kosher for health reasons.[3] Defendant York did not find that Plaintiff's beliefs were sincere. However, because Defendant York had no authority to approve or deny Plaintiff's request, he merely made notes of the interview in the "Chaplain's recommendation section." (Doc. 34-1, PAGEID #: 220).

As the Religious Services Administrator, Defendant Davis evaluated Plaintiff's request. Defendant Davis considered Defendant York's report, noting that Plaintiff was not in contact with Jewish clergy, had not had a bar mitzvah, and indicated his desire for kosher food was based on health. Defendant Davis further noted that Plaintiff had changed his religious preference several times. Taking all of this together, Defendant Davis determined that Plaintiff did not demonstrate sincerely held beliefs at the time. Thus, Defendant Davis denied Plaintiff's initial request.

As the Sixth Circuit has recognized, "[p]rison officials have a legitimate penological interest not only in controlling the cost of the kosher meal program and ensuring that only those with sincere beliefs participate in the program, but also in maintaining discipline within the prison." *See Berryman v. Granholm*, 343 F. App'x 1, 6 (6th Cir. 2009) (citation omitted). Moreover, "a lack of the basic knowledge regarding Judaism and the basic knowledge of why

---

[3] *See, e.g.*, Safer For Your Soul, But Is Kosher healthier, Too? https://www.npr.org/templates/story/story.php?storyId=129649433 (last visited on April 20, 2018).

11

food must be Kosher and what foods are Kosher is a strong indication of a lack of sincerity." *Adams v. Burnett*, No. 206-CV-72, 2007 WL 329992, at *5 (W.D. Mich. Jan. 31, 2007); *see also Kinney v. Curtin*, No. 2:08-CV-58, 2009 WL 3052215, at *12 (W.D. Mich. Sept. 21, 2009) ("The prison must have some standards to determine the sincerity of a religious belief before granting an accommodation request. Accordingly, Defendants' determination that Plaintiff showed a lack of sincerity should not be disturbed by this Court."). Based upon the foregoing, it was within Defendant Davis's discretion to deny Plaintiff's initial request for kosher meals. *See Flagner v. Wilkinson*, 241 F.3d 475, 481 (6th Cir. 2001) ("[P]rison officials should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.") (citation omitted).

Even if this Court disagreed with Defendant Davis and determined that Plaintiff's first request for kosher meals should have been approved—which it does not—"the Prison Litigation Reform Act ('PLRA') precludes an award of monetary damages for First Amendment claims where an inmate does not suffer a physical injury." *Stepler v. Warden, Hocking Corr. Facility*, No. 2:12-CV-1209, 2014 WL 3459880, at *3 (S.D. Ohio July 11, 2014), *adopted by*, No. 2:12-CV-01209, 2014 WL 4181703 (S.D. Ohio Aug. 21, 2014) (citing *Yaacov v. Collins*, No. 09–4148, 2010 U.S. App. LEXIS 27719, *10 (6th Cir. Dec. 1, 2010) (stating that the PLRA provision requiring that a prisoner suffer a physical injury in order to recover monetary damages "applies to all federal civil actions—even those alleging violations of the First Amendment or other constitutional provisions"). Here, Plaintiff seeks only monetary damages on his First Amendment claim and alleges no physical injury whatsoever. Thus, for all the above reasons, it

is **RECOMMENDED** that Defendants' Motion for Summary Judgment on the First Amendment claims be **GRANTED.**

b. Fourteenth Amendment - Equal Protection

Plaintiff also argues that Defendants' actions violated his Fourteenth Amendment right to equal protection of the law. The Equal Protection Clause "'protects against invidious discrimination among similarly-situated individuals or implicating fundamental rights. The threshold element of an equal protection claim is disparate treatment; once disparate treatment is shown, the equal protection analysis to be applied is determined by the classification used by government decision-makers.'" *Ervin*, 2017 WL 2573251, at *4 (quoting *Scarborough v. Morgan Cty. Bd. of Educ.*, 470 F.3d 250, 259 (6th Cir. 2006)). As Defendants note, prisoners are not considered a suspect class for purposes of equal protection litigation. (Doc. 31 at 13 (citing *Jackson v. Jamorg*, 411 F.3d 61, 619 (6th Cir. 2006))). Thus, "[i]n order for the actions of prison officials to rise to the level of a violation of the Equal Protection Clause, a prisoner must show that he or she was treated differently than similarly situated prisoners and that there was no rational basis for the difference in treatment." *Ervin*, 2017 WL 2573251, at *4 (citing *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)).

Even viewing the facts in the light most favorable to Plaintiff, he has made no showing that he was treated differently than similarly situated prisoners. Indeed, Plaintiff does not even mention other inmates or their experiences with kosher meal accommodations. Further, it is undisputed that Plaintiff was ultimately provided kosher meals when it was determined that it was appropriate to do so. Therefore, it is **RECOMMENDED** that Defendants' Motion for Summary Judgement as to the Fourteenth Amendment equal protection claims be **GRANTED**.

c. Fourteenth Amendment – Due Process

Plaintiff contends that Defendants, by failing to provide (1) reasons for their denial of his initial religious accommodations request and (2) an opportunity to appeal, violated ODRC policy 72-Reg-02 and thus violated his Fourteenth Amendment due process rights. (Doc. 28, PAGEID #: 122). As Defendants note, however, even if they did violate ODRC policy, the failure of prison officials to follow internal regulations and/or policies is not in and of itself a constitutional violation. *Davis v. Berghuis*, No. 1:12–CV–258, 2012 WL 3116360, at *10 (W.D. Mich. July 31, 2012) ("Indeed, Plaintiff's claim of "misconduct" appears to rest on the fact that Defendants did not comply with prison regulations, but that fact is not sufficient to state a claim on its own."); *Haight v. Thompson*, No. 5:11CV–P118–R, 2011 WL 4473143 at *3 (W.D. Ky. Sept. 26, 2011) ("A prison official's failure to follow internal rules and regulations does not alone state a constitutional violation . . ."). Thus, Plaintiff's claim that Defendants' violation of ODRC policy violated his constitutional rights is without merit. Moreover, the undersigned notes that Plaintiff received due process, in the form of an in-person interview with Defendant York (Doc. 34-1, PAGEID #: 220), adequate review by Defendant Davis of his responses found in the request form (Doc. 34-2, PAGEID #: 245), and his ability to reapply for kosher meal accommodation (*id.*, PAGEID #: 246). *See Kinney v. Curtin*, No. 2:08-CV-58, 2009 WL 3052215, at *9 (W.D. Mich. Sept. 21, 2009). Accordingly, it is **RECOMMENDED** that Defendants' Motion for Summary Judgement as to the Fourteenth Amendment claims—based on a violation of ODRC policy—be **GRANTED**.

d. Conspiracy

Plaintiff vaguely alleges that the acts of all Defendants "clearly show" that they "conspired to violate" his rights. (Doc. 23, PAGEID #: 103–04). Construing Plaintiff's Second

Amended Complaint liberally, the Court assumes that Plaintiff intended to proceed under § 1985(3), which creates a cause of action for conspiracy to violate civil rights. *Ctr. for Bio-Ethical Reform, Inc. v. City of Springboro*, 477 F.3d 807, 832 (6th Cir. 2007). "To succeed in establishing a § 1985(3) claim, the plaintiff must demonstrate '(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges or immunities of the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.'" *Id.* (quoting *Vakilian v. Shaw*, 335 F.3d 509, 518 (6th Cir. 2003)). Thus, a complaint must allege both a conspiracy and some class-based discriminatory animus behind the conspirators' action. *Id.* (citing *Newell v. Brown*, 981 F.2d 880, 886 (6th Cir. 1992)); *see also Randolph v. Campbell*, 25 F. App'x 261, 264 (6th Cir. 2001) ("In order to establish a cause of action under § 1985(3), a plaintiff must show that the named defendants were involved in misconduct that was motivated by some racial, or perhaps otherwise class-based, invidiously discriminatory animus.") (quotations and citations omitted). Conspiracy claims under § 1983 must "be pled with some degree of specificity," such that "vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim." *Ctr. for Bio-Ethical Reform, Inc.*, 477 F.3d at 832 (quotations and citation omitted).

Plaintiff has pled nothing that resembles class-based discriminatory animus, nor has he demonstrated that this alleged conspiracy to violate his rights was based upon his Jewish faith. Additionally, Plaintiff's Second Amended Complaint does not set forth specific allegations supporting his conspiracy claim, but only ambiguously asserts that Defendants "conspired to violate" his rights. *See id.* Consequently, it is **RECOMMENDED** that Defendants' summary judgment on Plaintiff's conspiracy claim be **GRANTED**.

### III. REMAINING MOTIONS (Docs. 34, 35, 36)

#### A. Defendants' Motion for Leave to Amend Exhibits (Doc. 34)

Defendants move the Court to amend Exhibits A and B of their Motion for Summary Judgment (Doc. 31), explaining that Defendant York's declaration was inadvertently not included and Defendant Davis was still reviewing his declaration at the time of filing. (Doc. 34 at 2). Defendants further explain that subsequent to the filing, additional errors were found within Exhibits A and B, which they now seek to correct. (*Id.*). Plaintiff filed no opposition to the Motion. For good cause shown, Defendants' unopposed Motion for Leave to Amend Exhibits A and B is **GRANTED**. The Clerk is **DIRECTED** to add Doc 34-1 and 34-2 as the corrected exhibits to the Motion for Summary Judgment (Doc. 31).

#### B. Plaintiff's Motion to Appoint Counsel (Doc. 35)

After all parties had filed their dispositive motions, Plaintiff filed a Motion for Appointment of Counsel, stating: (1) he is unable to afford counsel; (2) he made a reasonable attempt to secure counsel at no avail; (3) he has limited education, mental disability, and limited access to legal research resources; (4) appointing counsel to Plaintiff would substantially benefit the Court or the parties, potentially affecting the outcome of the case; and (5) the difficulty of this litigation exceeds Plaintiff's capacity as a lay person to coherently present himself. (Doc. 35 at 1–2). "The appointment of counsel in a civil proceeding is not a constitutional right and is justified only in exceptional circumstances." *Lanier v. Bryant*, 332 F.3d 999 (6th Cir. 2003). Here, Plaintiff has failed to demonstrate exceptional circumstances that warrant an appointment of counsel. *Lavado v. Keohane*, 992 F.2d 601, 605–606 (6th Cir. 1993) (citations omitted). Consequently, Plaintiff's Motion (Doc. 35) is **DENIED**.

### C. Plaintiff's Motion for Leave to Supplement Summary Judgment (Doc. 36)

In his Motion for Leave to Supplement Summary Judgment Motion, Plaintiff seeks to add "supplemented facts" based on events following the filing of his Second Amended Complaint. (Doc. 36). The additional facts discussed by Plaintiff involve an incident in which he was sanctioned for "misuse of his kosher accommodation" when he refused to take the meal because he was "fasting." (*Id.* at 2–5). Plaintiff seemingly argues that his decision to fast does not constitute a rule violation. (*Id.*).

These events deal with an entirely separate set of circumstances than the issues pled in Plaintiff's Second Amended Complaint. Consequently, the Motion is not one to supplement Plaintiff's Summary Judgment Motion, but instead is an entirely new lawsuit. Plaintiff may raise these issues before the Court in a new proceeding, but it is not appropriate for the Court to consider these issues at this time. Thus, Plaintiff's Motion for Leave to Supplement is **DENIED.**

## IV. CONCLUSION

Based upon the foregoing, the undersigned **RECOMMENDS** that Defendant Morgan be **DISMISSED without prejudice** for failure to timely effect proper service under Federal Rule Civil Procedure 4(m). Additionally, it is **RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED** (Doc. 28) and Defendants' Motion for Summary Judgment be **GRANTED** (Doc. 31). Finally, Defendants' Motion for Leave to Amend Exhibits A and B Filed in Support of Summary Judgment Motion (Doc. 34) is **GRANTED**; Plaintiff's Motion to Appoint Counsel (Doc. 35) is **DENIED**; and Plaintiff's Motion for Leave to Supplement Summary Judgment Motion (Doc. 36) is **DENIED**.

### Procedure on Objections

If any party objects to this Report and Recommendation, that party may, within fourteen

(14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. § 636(b)(1). Failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140, 152–53 (1985).

    IT IS SO ORDERED.

Date: April 20, 2018　　　　　　　　　　　　　　/s/ Kimberly A. Jolson
　　　　　　　　　　　　　　　　　　　　　　　KIMBERLY A. JOLSON
　　　　　　　　　　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE